UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>ROK Builders, LLC</u>

    **v.**

<u>2010-1 SFG Venture, LLC et al.</u>

Case No. 13-cv-16-PB
Opinion No. 2013 DNH 095

<u>**MEMORANDUM AND ORDER**</u>

ROK Builders, LLC ("ROK"), a creditor of Moultonborough
Hotel Group, LLC ("Moultonborough" or "Debtor"), appeals from
the Bankruptcy Court's confirmation of a Chapter 11 plan of
reorganization.  ROK seeks reversal of the confirmation order,
which led to the dissolution of Moultonborough and the
distribution of its assets.  I reject the appeal as equitably
moot and therefore do not reach the merits of ROK's objections
to the confirmation order.

## I.   <u>FACTS</u>

In 2007, ROK contracted with Moultonborough to build a
Hampton Inn and Suites hotel in Tilton, New Hampshire, which
Moultonborough owned until Moutonborough's dissolution in 2012.
In accordance with that contract, ROK prepared the building

site, constructed the hotel, installed permanent fixtures, and provided architectural and engineering services. ROK Builders, LLC v. 2010-1 SFG Venture, LLC, No. 12-cv-57-PB, 2012 WL 3779669, at *1 (D.N.H. Aug. 30, 2012). Moultonborough failed to pay ROK for some of this work. Id. ROK's claim against Moultonborough for the unpaid work was secured by a mechanic's lien in the amount of almost $2.5 million. Id. Another creditor, 2010-1 SFG Venture LLC ("SFG"), was an assignee of a construction mortgage on the hotel in the amount of more than $10.6 million. Id.

On September 30, 2010, Moultonborough filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Doc. No. 20. At the time, its assets were fully encumbered by five secured creditors, including ROK and SFG. Following an adversary proceeding, the Bankruptcy Court declared SFG's mortgage superior to ROK's mechanic's lien to the extent of roughly $6.4 million. On August 30, 2012, this court affirmed the Bankruptcy Court's decision. ROK Builders, 2012 WL 3779669, at *1.[1]

---

[1]  That decision is currently on appeal to the First Circuit. See Doc. No. 23; ROK Builders, LLC v. 2010-1 SFG Venture, LLC, No. 12-2182 (1st Cir. argued Apr. 2, 2013).

While the adversary proceeding was ongoing, the parties
litigated Moultonborough's Amended Plan of Liquidation dated
November 21, 2011 ("Amended Plan"), in Bankruptcy Court.  See
Doc. No. 3-2.  On January 24, 2012, ROK filed an objection to
the Amended Plan.  Doc. No. 10-2.  Its objection raised the
following issues:

- Moultonborough did not propose the Plan in good faith;
- SFG and the Debtor improperly solicited votes for
  confirmation of the Plan before a disclosure statement was
  approved;
- The Plan improperly classifies creditors;
- The cram down interest rate[2] is not fair and equitable; and
- The Plan settled a contempt claim against the Debtor's
  principal in violation of Bankruptcy Rule 9019.

See Doc. No. 12-2.

On January 31, 2012, the Bankruptcy Court held a
confirmation hearing at which the parties presented oral
arguments.  Doc. No. 12-2.  The court did not hear any evidence
and evaluated ROK's objections using the standard applicable for

---

[2] The so-called "'cram down' provision" of the Bankruptcy Code
permits the district court in "appropriate circumstances and
after making certain required findings, [to] confirm a plan
despite the disapproval of more than one-third of each class
affected."  St. Joe Paper Co. v. Atl. Coast Line R. Co., 347
U.S. 298, 314 (1954).  See generally, Jack Friedman, What Courts
Do to Secured Creditors in Chapter 11 Cram Down, 14 Cardozo L.
Rev. 1495 (1993).

a Rule 12(b)(6) motion to dismiss.  Accordingly, the Bankruptcy
Court presumed the truth of the factual allegations in ROK's
objection to determine whether ROK had presented plausible
grounds for denying confirmation of the Amended Plan.  Id.

On February 21, 2012, the Bankruptcy Court rejected three
of ROK's claims, specifically: that the Amended Plan was not
filed in good faith; that SFG and Moultonborough improperly
solicited votes before a disclosure statement was approved; and
that the Amended Plan improperly classified creditors.  Id.  The
Bankruptcy Court ordered an evidentiary hearing to resolve the
two remaining claims.  Id.  On November 8, 2012, after a
hearing, the Bankruptcy Court denied confirmation of the Amended
Plan, and required an amendment of the cram down interest rate.
Doc. No. 20-1.

In accordance with the Bankruptcy Court's decision,
Moultonborough filed a Second Amended Plan of Liquidation dated
November 9, 2012 ("Second Amended Plan" or "the Plan").  Doc.
No. 20-3.  The Plan's more significant provisions are as
follows.  The Plan classified each of the creditors' claims into
classes and indicated how each class would be treated.  Id.  It
stated that SFG held a Class 2 Secured Claim in the amount of

$10,622,887.83, which would be reduced to $6 million minus any mechanics' liens that the Bankruptcy Court deemed senior to the SFG mortgage.  Id.  It further provided that the balance of the SFG Claim (approximately $4.6 million) ("SFG Deficiency Claim") "shall be deemed compromised, waived and extinguished" on the date the Plan goes into effect.  Id.  In consideration for SFG's settlement payments to administrative, priority, and unsecured claimholders, and the compromise of the SFG Deficiency Claim, Moultonborough agreed to dismiss with prejudice the adversary proceeding and to release any and all legal claims it had against SFG.  Id.

Additionally, the Plan categorized Classes 3, 4, 5, and 6 as "Mechanic's Lien Claims."  It identified ROK's secured claim of roughly $2 million as a Class 3 claim.  Id.  The Plan stated that if a mechanic's lien claim is senior to the mortgage, the holder of the mechanic's lien claim shall "retain the lien in an amount equal to the senior secured portion of the Allowed Mechanic's Lien Claim" and "receive from SFG (or its designee) deferred monthly cash payments for a period of seven (7) years commencing 30 days after the Effective Date and of the value equal to the Allowed Senior Secured Mechanic's Lien Amount

5

calculated at a rate of 4.75% per annum." Id.  It provided that any mechanic's lien claims which are not senior to the Mortgage shall be treated as unsecured Class 7 claims. Id.  Under the Plan, Class 7 unsecured claims would be paid from the settlement payment and from any recovery of avoidance actions. Id.  The Plan also provided for Moultonborough to transfer and convey to SFG or its designee all of its real and personal property. Id.

The Plan stated that entry of the Order confirming the Plan would constitute "authorization and direction for the Debtor to take or cause to be taken all corporate or other actions necessary or appropriate to consummate and implement the provisions of the Plan." Id.  On the effective date:

> (i) the Transferred Assets will be conveyed and transferred to Lender (or its designee) free and clear of all liens, claims, encumbrances and interests; (ii) any and all mortgages, deeds of trust, liens, or other security interests against the Transferred Property shall be released and forever discharged, and all the right, title, and interest of any holder of such mortgages, deeds of trust, liens, or other security interests shall revert to the Lender (or its designee) and its successors and assigns.

Id.  Upon the effective date, the Plan specified that Moultonborough shall cease to exist and be automatically dissolved. Id.

Concurrent with the Second Amended Plan, Moultonborough filed a proposed confirmation order.  Doc. No. 20-4.  Section 23(I) of the proposed confirmation order contained a provision waiving the automatic stay of the confirmation order that is otherwise required pursuant to Bankruptcy Rule 3020(e).[3]  Id. The proposed stay waiver provision stated that "the 14 day stay imposed by Federal Bankruptcy Rule 3020(e) is hereby waived," and the confirmation order "shall be effective and enforceable immediately upon entry."  Id.

On November 30, 2012, ROK filed an objection to the Second Amended Plan.  Doc. No. 22-1.  It did not, however, challenge the stay waiver provision included in Moultonborough's proposed confirmation order.  See id.

On December 3, 2012, the Bankruptcy Court held an evidentiary hearing on the Second Amended Plan.  Doc. No. 30 (conventionally filed), Hr'g Tr. 12/3/12.  At the hearing, the court indicated that it had reviewed and was likely to enter

---

[3] Rule 3020(e) states: "Stay of confirmation order[:] An order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 3020(e).

Moultonborough's proposed confirmation order.[4]  Id. at 65:10-14.
ROK orally raised numerous objections to the Second Amended
Plan, but did not object to the stay waiver provision.

The following day, ROK filed a written objection to
Moultonborough's Second Amended Plan.  Doc. No. 22.  ROK also
filed an "Objection to Any Order Confirming [the Second Amended
Plan]."  Doc. No. 22-4.  Once again, ROK did not mention the
stay waiver provision in either filing.

On December 5, 2012, the Bankruptcy Court issued an order
overruling all of ROK's objections, Doc. No. 23, and entered its
confirmation order.  Doc. No. 23-1.  The confirmation order
included the stay waiver provision Moultonborough had proposed.
Id. at § 23(I).  ROK did not seek a stay of the confirmation
order.  The Second Amended Plan became effective on December 6,
2012.  Doc. No. 23-3.

---

[4]  The Bankruptcy Judge stated, "There has been a proposed
confirmation order submitted.  I've looked it over.  I'll take
another look at it.  I probably will enter that order, but I'll
probably also enter a separate order that incorporates what I've
said here on the record and said here today. . . . [T]he
confirmation order will be entered in one form or another and
then people are free to let that become a final order or not. .
. ."  Doc. No. 30 (conventionally filed), Hr'g Tr. 12/3/12 at
65:10-14.

In accordance with the Second Amended Plan, Moultonborough
was dissolved and its assets distributed.  Specifically:

- The Debtor transferred the hotel to SFG's designee;
- SFG discharged its mortgage;
- The hotel was leased by SFG's designee to a separate
  corporate entity;
- Pyramid was retained as the new hotel manager;
- Pyramid hired 27 hotel employees;
- SFG funded $160,000 to pay initial hotel operating
  costs;
- SFG made the settlement payment of $150,000 to the
  Debtor's estate;
- The Debtor was paid $79,384.03 from the $150,000
  settlement payment made by SFG;
- SFG funded the payment of other administrative
  claims in the aggregate of $34,775.62, which amount
  was distributed to 17 different parties, including
  state tax authorities;
- The Debtor dismissed pending litigation and released
  claims against SFG;
- SFG made a payment of $227,000 in connection with a
  settlement agreement with certain of the Debtor's
  creditors, which payment was triggered by the
  effective date of the Debtor's Plan;
- The Debtor has no remaining assets; and
- The Debtor has been dissolved and no longer has any
  officers, directors or other employees.

Doc. No. 41 at ¶ 21.  On December 18, 2012, ROK filed a notice
of appeal but did not seek a stay of the confirmation order
concurrent with its appeal.  See Doc. No. 1.

On January 23, 2013, ROK, SFG, and Moultonborough sought
permission to separately address SFG's and Moultonborough's
claim that the appeal is equitably moot.  Doc. No. 32.  On

9

January 24, 2013, I rejected this request and ordered the
parties to present the mootness issue in their merits briefs.
Endorsed Order dated Jan. 24, 2013.  On January 29, 2013,
consistent with the Endorsed Order, SFG and Moultonborough
jointly moved to add the mootness issue to the issues presented
on appeal and to supplement the record with two affidavits that
provide facts supporting appellees' mootness argument.  Doc. No.
34.  The affidavits were executed by Daniel M. Kasell,
transaction counsel for an affiliate of SFG, and Steven M.
Notinger, counsel for Moultonborough.  ROK did not object to the
motion, and I granted it on February 19, 2013.  Endorsed Order
dated Feb. 19, 2013.

Also on February 19, 2013, ROK filed its appeal with this
court, raising numerous issues relating to the confirmation
order, including:

- Whether the Bankruptcy Court erred in confirming the Plan
  without taking testimony at the confirmation hearing on
  each and every subsection of § 1129(a);
- Whether the Bankruptcy Court correctly determined that the
  Plan was filed in good faith;
- Whether the Bankruptcy Court correctly found that the Plan
  satisfies 11 U.S.C. §§ 1122(a) and 1129(b);
- Whether the Bankruptcy Court erred in approving the Attar
  Release; and
- Whether the Bankruptcy Court erred in denying ROK's request
  to include a provision in the confirmation order regarding
  the effect of the debtor's release of equitable

subordination claims against SFG.
Doc. No. 35.  ROK seeks the comprehensive reversal of the
actions taken in reliance on the Plan and "restoration of the
status quo prior to" those actions, including an order
reconstituting Moultonborough and reinstating its ownership of
the hotel.  Doc. No. 39.

ROK did not address the mootness issue in its initial
brief.  Id.  The Appellees filed a response brief on March 18,
2013, arguing that the Plan was moot and objecting to the merits
of ROK's contentions.  Doc. No. 37.  On April 15, 2013, ROK
filed a reply in which it addressed the mootness question and
the merits of its objections to the confirmation order.  Doc.
No. 39.

## II.  <u>STANDARD OF REVIEW</u>

This court has jurisdiction to hear appeals from final
judgments, orders, and decrees issued in bankruptcy court
pursuant to 28 U.S.C. § 158(a)(1).  Generally, when reviewing a
decision by a bankruptcy court, the district court upholds
findings of fact unless they are clearly erroneous, and reviews
legal conclusions de novo.  Fed. R. Bankr. P. 8013; Palmacci v.

Umpierrez, 121 F.3d 781, 785 (1st Cir. 1997); Askenaizer v. Moate, 406 B.R. 444, 447 (D.N.H. 2009).

In this case, however, Moultonborough has responded to ROK's appeal by raising the threshold argument that the appeal is equitably moot.  I must address this question before reaching the merits of ROK's arguments.  Where an appellee asks me to dismiss a bankruptcy appeal on the basis of equitable mootness, the standard of review normally applicable in a bankruptcy appeal is not relevant, as I am "not reviewing the bankruptcy court at all, but exercising [my] own discretion in the first instance." In re Charter Commc'ns, Inc., 691 F.3d 476, 483 (2d Cir. 2012); see also In re United Producers, Inc., 526 F.3d 942, 947 (6th Cir. 2008).

### III. **ANALYSIS**

The doctrine of equitable mootness attempts to reconcile two competing public policy considerations that are potentially implicated when a reviewing court is asked to consider a challenge to a Chapter 11 confirmation order.[5]  The first policy

---

[5] Equitable mootness is grounded in prudence rather than a constitutional limitation on the court's power to act.  See In re Stephens, 704 F.3d 1279, 1282 (10th Cir. 2013).  In rare circumstances the implementation of a confirmation order can

consideration is the public interest in permitting appellate

review of final court orders.  This policy is reflected in the

bankruptcy statute, which generally allows a dissatisfied

creditor to appeal from an allegedly erroneous confirmation

order.  See 28 U.S.C. § 158.  The second policy consideration is

the public interest in preserving the finality of bankruptcy

court rulings.  See In re Pub. Serv. Co. of N.H., 963 F.2d 469,

471-72 (1st Cir. 1992) (quoting In re Revere Copper & Brass,

Inc., 78 B.R. 17, 23 (S.D.N.Y. 1987)) (noting the "important

public policy favoring orderly reorganization and settlement of

debtor estates by 'affording finality to the judgments of

---

progress to the point where a claim can become moot in the
constitutional sense.  If mootness is loosely conceived as
"standing set in a time frame," Henry P. Monaghan,
Constitutional Adjudication: The Who and When, 82 Yale L.J.
1363, 1384 (1973), but see Friends of the Earth, Inc. v. Laidlaw
Envtl. Servs. (TOC), Inc., 528 U.S. 168, 170 (2000).
(acknowledging concept but declaring that it is not a
comprehensive description of mootness doctrine); WildEarth
Guardians v. Pub. Serv. Co. of Colo., 690 F.3d 1174, 1186 (10th
Cir. 2012) (explaining differences between redressability
requirement of standing and mootness), the implementation of a
confirmation order can render a case moot if the assets that are
the subject of the claim have passed beyond the court's
jurisdiction.  In such cases, the constitutional power to decide
the case has been lost because the court can no longer redress
the claimed injury.  See Hollingsworth v. Perry, ⸺ U.S. ⸺,
2013 WL 3196927, at *6 (June 26, 2013) (redressability is an
essential aspect of standing under Article III of the
Constitution).

bankruptcy courts'"). Finality is especially important in this context because in bankruptcy, "numerous contending claims and interest are gathered, jostle, and are determined and released," Corbett v. MacDonald Moving Servs., Inc., 124 F.3d 82, 91 (2d Cir. 1997), the ability to successfully reorganize can be endangered by appellate uncertainty, In re UNR Indus., Inc., 20 F.3d 766, 769 (7th Cir. 1994), and third parties need to be able to rely on agreements they have entered into with reorganized entities, In re Thorpe Insulation Co., 677 F.3d 869, 880 (9th Cir. 2012).

The First Circuit has chosen to address these public policies by creating two categories of factors – equitable considerations and pragmatic considerations - that a court should address in determining whether a bankruptcy appeal is equitably moot.  See In re Pub. Serv., 963 F.2d at 473.  An equitable consideration that may affect the analysis but is not sufficient by itself to support a finding of equitable mootness is whether the appellant has taken feasible measures to protect itself from a confirmation order being implemented.  In re Pub. Serv., 963 F.2d at 473; In re Healthco Int'l, Inc., 136 F.3d 45, 48 (1st Cir. 1998).  Among the pragmatic considerations that may

affect the analysis are whether the relief requested would adversely affect third parties who are not before the court, and whether appellate reversal would result in a "nightmarish situation for the bankruptcy court on remand." In re Pub. Serv., 963 F.2d at 473. In evaluating these pragmatic considerations, a court must "scrutinize each individual claim, testing the feasibility of granting relief against the potential impact on the reorganization scheme as a whole." Id. (quoting In re AOV Indus., Inc., 792 F.2d 1140, 1148 (D.C. Cir. 1986)). Ultimately, the reviewing court must treat the equitable and pragmatic tests for equitable mootness as "symbiotic." Institut Pasteur v. Cambridge Biotech Corp., 104 F.3d 489, 492 n.5 (1st Cir. 1997).[6]

In this case, given that ROK essentially sat on its right to seek a stay of the implementation of the Plan, equitable considerations weigh heavily in favor of a finding of equitable mootness. ROK had ample opportunity to object to the stay

---

[6] Other circuit courts have recently developed tests that are consistent with the approach taken in this circuit. See, e.g., In re Charter Commc'n, Inc., 691 F.3d 476, 482 (2d Cir. 2012); In re Phila. Newspapers, LLC, 690 F.3d 161, 168 (3d Cir. 2012); In re Thorpe, 677 F.3d at 881. I rely on these decisions in resolving the issue before me to the extent that they are helpful while remaining faithful to the First Circuit standard.

waiver provision in the confirmation order before the Bankruptcy
Court approved Plan, and also could have sought a stay pending
appeal even after approval.  The provision was included in the
appellees' proposed confirmation order, which was filed with the
court on November 9, 2012.  On November 26, 2012, ROK objected
to the Second Amended Plan, filed concurrently with the proposed
confirmation order, but did not object to the stay waiver
provision.  At the evidentiary hearing before the court on
December 3, 2012, ROK raised numerous objections to the Plan,
but did not object to the stay waiver provision in the proposed
order.  Even after the Bankruptcy Judge expressed his intention
to enter the proposed order as the final confirmation order, ROK
did not object to the stay waiver.  Following the hearing, ROK
filed an objection to the Plan, even arguing for the inclusion
and exclusion of certain provisions in the court's forthcoming
confirmation order, but, again, did not challenge the stay
waiver provision.  The court issued the final confirmation order
on December 5, 2012, almost one month after the proposed
confirmation order was filed with the court.  It predictably
included the stay waiver provision.  Moultonborough began
implementing the Plan on December 6.  Although ROK filed an

16

appeal on December 18, it never sought a stay pending appeal.

Failure to seek a stay weighs in favor of finding mootness, but is insufficient on its own to render the appeal equitably moot. In re Pub. Serv., 963 F.2d at 473.  The court must also consider pragmatic considerations, specifically, whether granting appellate relief would adversely affect third parties regardless of whether the appellant sought a stay, In re Healthco, 136 F.3d at 48, or is impracticable because of the extent to which the order has been implemented. In re Pub. Serv., 963 F.2d at 473 (considering whether appellate reversal would result in a "nightmarish situation for the bankruptcy court on remand").  Here, pragmatic considerations also support a finding of equitable mootness because this case has progressed to a point where third parties will be affected and appellate relief would create a "nightmarish situation." See id.

The relief ROK seeks would adversely impact third parties not before the court.  See In re Pub. Serv., 963 F.2d at 476. Numerous third parties have acted in reasonable reliance on the confirmation order.  Doc. No. 41 at ¶ 21.  For example, Laconia Boulevard Hotel Owner, LLC ("Laconia") acquired the Hotel as designee of SFG.  Doc. No. 37.  Laconia leased the hotel to

17

Laconia Boulevard Hotel Lessee, LLC ("Laconia Lessee").  Id.
SFG hired Pyramid Hotel Group ("Pyramid") to be the new hotel
manager.  Id.  Pyramid hired twenty-six employees.  Id.
Moultonborough transferred more than $1.2 million to SFG in
settlement payments.  Id.  SFG, in turn, disbursed funds to
various tax authorities and suppliers in satisfaction of
Moultonborough's administrative expenses.  Id.

       In addition, in this case, "reversal of the order
confirming the plan . . . would knock the props out from under
the authorization for every transaction that has taken place"
and "do nothing other than create an unmanageable,
uncontrollable situation for the Bankruptcy Court." In re
Roberts, 652 F.2d at 797.  The First Circuit considers whether a
Plan has been "substantially consummated" when determining
equitable mootness.  See 11 U.S.C. § 1101(2) (defining
"substantial consummation"); In re Healthco, 136 F.3d at 49; In
re Pub. Serv., 963 F.2d at 474.

       Here, ROK seeks a total reversal of the Plan, which has
been substantially consummated.  Moultonborough's property has
been transferred, and the company has been dissolved.  Laconia
has taken over Moultonborough's only business (the hotel) and

substantially all of Moultonborough's property.  ROK seems to
imply that Laconia is an entity that is associated with SFG.
Even if that were true, it is still impracticable to unwind the
plan.  Distributions have commenced, including: distribution
substantially all of Moultonborough's cash and personal
property; distribution of $79,384 to Moultonborough's attorney
in satisfaction of an administrative expense claim; and payment
of an aggregate of $34,775 to tax authorities and seventeen
suppliers in satisfaction of administrative expense claims.  See
Doc. No. 37.  ROK does not allege that the plan was not
substantially consummated.  Nor does ROK provide any evidentiary
support or legal authority for its conclusory assertions that
these transactions can be unwound, either individually or in the
aggregate.  See Doc. No. 39.  As the First Circuit has stated,
"the innumerable transfers legitimately effected . . . in
reliance on the order of confirmation . . . plainly represent so
substantial a consummation of the reorganization plan as to
render the requested appellate relief impracticable."  In re
Pub. Serv., 963 F.2d at 474.

### III. <u>CONCLUSION</u>

Viewing the relevant equitable and pragmatic considerations symbiotically, I conclude that the appeal is equitably moot. Accordingly, and for the foregoing reasons, I deny ROK's appeal of the confirmation order.  Doc. No. 35.

SO ORDERED.

<u>/s/Paul Barbadoro</u>
Paul Barbadoro
United States District Judge

July 16, 2013

cc:   Deborah Notinger, Esq.
      Steven Notinger, Esq.
      William Gannon, Esq.
      Edmond Ford, Esq.
      Gary Ticoll, Esq.
      Geraldine Karonis, Esq.